# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

SHAWN O'HARA                                                        **PLAINTIFF**

V.                                    CIVIL ACTION NO. 2:11-CV-208-KS-MTP

TRAVELERS, also named, THE AUTOMOBILE
INSURANCE COMPANY OF HARTFORD,
CONNECTICUT (INSURER)                                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendant's Motion to Exclude [41] the testimony of George Sumrall; **grants in part and denies in part** Defendant's Motion for Summary Judgment [43]; **denies** Defendant's Motion for Sanctions [88]; and **denies as moot** Plaintiff's Motion for an Extension of Time [64] and Defendant's Motions to Strike [73, 79, 80].

## I. BACKGROUND

This is a bad faith/breach of contract case stemming from a house fire on August 17, 2008. The central factual dispute of the case is whether the payment tendered by Defendant complies with the terms of the policy, which provides that Defendant will pay no more than the actual cash value of the damage to the house until actual repair or replacement is complete. Plaintiff contends that the tendered payment was insufficient, and that Defendant has breached the policy in bad faith.

Plaintiff filed this case [1-1] in the Circuit Court of Forrest County, Mississippi, on August 16, 2011. Defendant removed it [1] to this Court on October 13, 2011, on the

basis of diversity jurisdiction. On January 5, 2012, Plaintiff sought leave to amend his complaint to request additional damages and to add Debra Barclay, an employee of Defendant who is a citizen of Mississippi, as a defendant. On February 10, 2012, the Magistrate Judge granted the motion in part and denied it in part [13]. Specifically, the Magistrate Judge denied the motion with respect to the addition of Barclay, finding that Plaintiff's sole purpose in adding Barclay was to defeat the Court's jurisdiction, but the Magistrate Judge allowed Plaintiff's additional amendments. Plaintiff never filed an amended complaint, though.

On February 27, 2012 – over four months after Defendant removed the case – Plaintiff filed a motion to remand [16], arguing that Defendant failed to remove the case within the thirty-day time period imposed by 28 U.S.C. § 1446. The Court denied [20] the motion, finding that Plaintiff had waived any remand argument based on a procedural defect. 28 U.S.C. § 1447.

On June 14, 2012, Plaintiff filed a handful of motions [33, 34, 35, 36, 37, 38, 39, 40]. Among them was a motion for recusal [40] of the undersigned judge and the Magistrate Judge assigned to this case. On June 18, 2012, the Court denied [45] Plaintiff's motion for recusal, noting that no reasonable person would doubt the impartiality of either the undersigned judge or the Magistrate Judge based on the allegations of Plaintiff's motion. The Court then denied Plaintiff's remaining motions [47, 48, 49, 50, 51, 52, 53], finding that each of them was either premature or without merit. Among these motions was a second motion to remand [34], which asserted no new argument with respect to the issue. The Court warned Plaintiff [47] that the filing

of additional frivolous motions may result in sanctions.

Plaintiff later filed several motions for reconsideration [58, 59, 60, 61, 62]. Among these was a motion for reconsideration [58] of the Court's order denying the motion for recusal, which the undersigned judge referred [74] to United States District Judge Halil S. Ozerden in accordance with the Court's standing order regarding referrals. In the same order, the Court stayed all pending motions until the recusal issue had been resolved.

Despite the Court's unambiguous order staying all pending motions, the parties continued to file various briefs, notices, and motions. Therefore, the Court entered another order [89] explicitly ordering the parties to refrain from filing any briefs, motions for extensions, motions to strike, or other pleadings related to the issues that had already been presented to the Court. The Court advised the parties that it would assess the docket after the recusal motion had been addressed and advise the parties if further briefing was necessary.

On July 18, 2012, Judge Ozerden denied [90] Plaintiff's motion for reconsideration of the recusal issue. Judge Ozerden found that Mr. O'Hara's motion was supported by nothing but unsubstantiated assertions in unsworn documents, and that it was not legally sufficient under 28 U.S.C. § 144. Judge Ozerden also found that Plaintiff's unsubstantiated and unsworn allegations were insufficient to establish bias on the part of the undersigned judge or the Magistrate Judge, or raise any reasonable question of impartiality, as required by 28 U.S.C. § 455.

Following Judge Ozerden's order, the Court denied [91] three of Plaintiff's other

pending motions for reconsideration [60, 61, 62]. One of these was motion for reconsideration of the remand issue [60], which the Court had already addressed on two separate occasions [20, 47]. Therefore, the Court warned Plaintiff in clear and unambiguous terms that it would impose sanctions on him if he filed any further motions which presented nothing beyond arguments and/or evidence that the Court had already addressed.

The Court now considers Defendant's Motion to Exclude [41] the expert testimony of George Sumrall and Motion for Summary Judgment [43]. Plaintiff filed responses to both motions [54, 55, 56], and Defendant filed rebuttals [57, 63]. Therefore, the motions are ripe for review.

## II. EVIDENTIARY MATTERS

Before the Court addresses Defendant's substantive motions, it must address various evidentiary disputes that have arisen throughout the briefing process. All of these matters were not necessarily raised in the parties' briefs on the subject motions [42, 44, 54, 55, 56, 57, 63]. Rather, they were scattered throughout the docket in various filings outside the briefing process outlined in the local rules. *See* L.U.Civ.R. 7(b)(4). The Court is not obligated to search the record for a party's arguments and evidence on a dispositive motion. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Criner v. Texas – New Mexico Power Co.*, 2012 U.S. App. LEXIS 9262, at *13 (5th Cir. May 7, 2012). Nonetheless, in an abundance of patience, the Court will address each evidentiary issue raised by the parties, whether properly raised in the formal briefing process or not.

4

## A.       Affidavit of Michael Smith

Plaintiff argues that the Court should strike the affidavit of Michael Smith because it was not signed "under penalty of perjury," and because it was not disclosed prior to the discovery deadline.

As for Plaintiff's first argument, "there is no requirement for a set of magic words" to make an affidavit valid evidence. *DIRECTV Inc. v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005). An affidavit may be signed and sworn before a notary public or it may be signed and declared true and correct under penalty of perjury. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988); *Tate v. Starks*, 444 F. App'x 720, 728 n. 8 (5th Cir. 2011); *Noack v. YMCA*, 418 F. App'x 347, 353 (5th Cir. 2011). Smith's affidavit was signed, sworn, and notarized. His omission of the phrase "under penalty of perjury" is irrelevant.

Likewise, Plaintiff's objection that Smith's testimony was not disclosed prior to the discovery deadline is without merit. According to Plaintiff's own representations in briefing and the undisputed record evidence, Smith was involved with Plaintiff's insurance claim long before this litigation began. Therefore, even if Defendant failed to identify Smith as a potential witness, Plaintiff was otherwise aware that he had discoverable information, and Defendant had no duty to supplement its disclosures with the specific testimony contained in the affidavit. FED. R. CIV. P. 26(e)(1)(A). In short, Plaintiff knew that Smith had discoverable knowledge, yet failed to depose him. Accordingly, Plaintiff can not now complain that Smith's testimony is a surprise. *See Regan v. Annett Holdings, Inc.*, 2009 U.S. Dist. LEXIS 117388, at *10 (S.D. Miss. Dec.

16, 2009); *Brooks v. Stringer*, 2007 U.S. Dist. LEXIS 101316, at *13 (S.D. Miss. Jan. 5, 2007) ("The crucial issue . . . is whether the identities of the affiants were disclosed . . . in a timely manner, so that they could have had the opportunity to depose them or conduct additional discovery with respect to them.").

**B.    *Affidavit of Michael Davidson***

Plaintiff argues that Defendant failed to disclose Captain Michael Davidson's affidavit or his status as a potential witness prior to the discovery deadline. He also argues that Davidson's affidavit was not notarized and signed "under penalty of perjury," and that it contains hearsay.

It is apparent from the record that Plaintiff has known for some time that Davidson has discoverable knowledge. Captain Davidson was listed in the Hattiesburg Fire Department's report [43-8] as the officer-in-charge at the scene of the fire. Both Plaintiff and Defendant produced the report during discovery. Therefore, Plaintiff was otherwise aware that Davidson had discoverable information, and Defendant had no duty to supplement its disclosures to add Davidson as a potential witness. FED. R. CIV. P. 26(e)(1)(A). Plaintiff knew that Davidson had discoverable knowledge, yet failed to depose him. Accordingly, Plaintiff can not now complain that Davidson's testimony is a surprise. *See Regan*, 2009 U.S. Dist. LEXIS 117388 at *10; *Brooks*, 2007 U.S. Dist. LEXIS 101316 at *13.

Additionally, Davidson's affidavit was signed, sworn, and notarized. His failure to include the phrase "under penalty of perjury" is irrelevant. *Nissho-Iwai*, 845 F.2d at 1305-06; *Tate*, 444 F. App'x at 728 n. 8; *Noack*, 418 F. App'x at 353.

## C.    *Deposition Transcript of George Sumrall*

Plaintiff argues that the court reporter failed to sign the transcript "under penalty of perjury." Rule 30(f) provides: "The [court reporter] must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony. The certificate must accompany the record of the deposition." FED. R. CIV. P. 30(f)(1). Therefore, while "deposition transcripts and other discovery materials may be used as summary judgment evidence under Rule 56(e), Rule 30(f)(1) . . . requires the court reporter to certify in writing that the witness was duly sworn and that the deposition is a true record of the testimony given by the witness." *Tower v. City of Denton*, 2007 U.S. Dist. LEXIS 101619, at *6 (E.D. Tex. Sept. 13, 2007). Defendant failed to provide a copy of the court reporter's certification. Accordingly, the Court may not consider the transcript of George Sumrall's deposition when addressing Defendant's motion for summary judgment.

## D.    *Color Photographs*

Plaintiff argues that Defendant failed to disclose certain color photographs before the discovery deadline, and that the photographs in question were "doctored." He also contends that the photographs were not submitted "under penalty of perjury." Defendant represented in briefing that it produced approximately 105 copied photographs to Plaintiff prior to Sumrall's deposition, but that it acquired two compact discs of photographs on the day of the deposition. Defendant represents that Plaintiff agreed at the deposition to the disclosure of the photographs outside the discovery period, but that Plaintiff called days later to object to disclosure of the photographs.

The Court declines to address Plaintiff's objections to the color photographs, but it will not consider them when addressing Defendant's dispositive motion, as they would have no bearing on the outcome of the case.

## E.  *Deposition Transcript of Shawn O'Hara*

Plaintiff argues that he was not provided the opportunity to review the transcript of his deposition, and that the transcript was not signed by the court reporter "under penalty of perjury."

As noted above, "Rule 30(f)(1) . . . requires the court reporter to certify in writing that the witness was duly sworn and that the deposition is a true record of the testimony given by the witness." *Id.* Also, Rule 30(e) provides that a "deponent must be allowed 30 days after being notified by the [court reporter] that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in the form or substance, to sign a statement listing the changes and the reasons for making them." FED. R. CIV. P. 30(e)(1).

Defendant failed to provide the court reporter's certificate. Additionally, there are no exceptions to Rule 30(e)'s requirement that a deponent be permitted to review the transcript of his deposition. *Reed v. Hernandez*, 114 F. App'x 609, 611 (5th Cir. 2004). Therefore, the Court may not consider the transcript of Plaintiff's deposition when addressing Defendant's motion for summary judgment.[1]

---

[1]The court reporter noted that Plaintiff waived his right to review and sign the deposition: "Signature/Waived." Plaintiff did not address this in any of his pleadings, but in light of Defendant's failure to include the court reporter's certification, it is not necessary for the Court to address this discrepancy.

## F.    *Miscellaneous Documents*

Plaintiff argues that the estimate [44-3], structural damage report [44-4], and bids [44-5] presented by Defendant were not signed or submitted "under penalty of perjury." The Court interprets this objection as one pertaining to authentication.

Documents submitted as summary judgment evidence must be authenticated. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991). The proponent of documentary evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). One method of authenticating a document is to produce testimony that it is what it is claimed to be. FED. R. EVID. 901(b)(1). A document may also be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . ., taken together with all the circumstances." FED. R. EVID. 901(b)(4).

### 1.    *Smith's Estimate [44-3]*

In Michael Smith's affidavit – which the Court has ruled admissible – he testified that he generated an estimate over 25 pages long, which provided that the "actual cash value of the damage to the dwelling was $34,343.94, with an additional $28,966.23 to be paid if repairs were made and proper documentation was submitted." In the Court's opinion, this testimony is sufficient to prove that the estimate which Defendant seeks to enter into evidence is authentic. The document [44-3] is twenty-eight pages long, it provides the same damage values as provided in Smith's affidavit, and it provides that it was generated by Smith for the subject property. Accordingly, Defendant has presented sufficient evidence to prove that the estimate [43-3] is what

Defendant claims it to be.

2. *Structural Damage Assessment [43-4]*

Michael Smith also testified by affidavit that Defendant "elected to have an independent structural engineer inspect the dwelling," and that the engineer provided a report." The structural damage assessment [43-4] submitted with Defendant's motion for summary judgment pertains to the subject property, and it was obtained by Defendant. Based on Smith's testimony and the contents of the document [43-4], the Court finds that the structural damage assessment is what Defendant claims it to be.

3. *Bids [43-5]*

Plaintiff objects to the Court's consideration of two "bids" [43-5] that he apparently provided to Defendant for the reconstruction of his house, a front porch, and a handicap ramp. Without addressing the merits of Plaintiff's objection, the Court elects to not consider the bids.

**G.      *Report of Robert W. Claunch***

In response to Defendant's motion for summary judgment, Plaintiff presented a letter from Robert W. Claunch, a licensed engineer, dated March 16, 2009. Claunch represented that he visited the fire-damaged house on March 13, 2009. He concluded that repair of the building was not justified. Defendant objects to the Court's consideration of the letter for a number of reasons, including Plaintiff's failure to designate Claunch as an expert witness.

1. *Failure to Designate Claunch as an Expert Witness*

Rule 26 requires the disclosure of the identity of any potential expert witnesses

to be called at trial, and that the potential expert witness provide a written report. FED. R. CIV. P. 26(a)(2)(A), (B). "If a party fails to designate an expert witness, Federal Rule of Civil Procedure 37 prohibits the party from using that witness to supply evidence at a motion, hearing, or trial unless the failure was substantially justified or harmless." *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008). When deciding whether to exclude an expert not properly designated, the Court considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.* (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

First, Plaintiff has not offered any explanation for his failure to designate Claunch as an expert witness in this matter. The Fifth Circuit "take[s] seriously" such lack of explanation. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007). The "exclusion of expert witnesses is particularly appropriate where the party has failed to provide an adequate explanation for their failure to identify their expert within the designated timetable." *Id.* (punctuation omitted).

As for the second factor, the testimony would have some probative value as to the feasibility of repairing the damage caused by the fire. However, that value is limited by Claunch's apparent failure to conduct a thorough inspection of the house. Claunch expressly represented that the house had been sealed at the time of his inspection, and he offered no observations or opinions with respect to the interior of the house. He apparently based his opinion on a viewing of the house's exterior – which he

represented that Plaintiff had repaired, or at least painted – review of the Hattiesburg Fire Department's reports, and Plaintiff's representations. Although he admitted that it was not possible for him to assess the damage to the utilities, he opined that they would have to be completely replaced. Similarly, he stated that the structural members of the house would have to be replaced, but he failed to articulate any basis for that opinion. Accordingly, the Court believes that Claunch's testimony would only be of slight importance, if any.

With respect to the third factor, the Court does not believe that Defendant would be greatly prejudiced by allowing Claunch's testimony. The letter is dated March 16, 2009. According to Defendant's claim notes [54-4] and the structural damage assessment from Robert Melton, Defendant received Claunch's letter as early as May 2009. Therefore, Defendant has known about Claunch's potential testimony for over three years, yet Defendant did not depose him. Accordingly, the Court finds that the prejudice to Defendant, if any, is slight.

Finally, it is the undersigned judge's typical practice to dispose of all dispositive motions and evidentiary disputes before the pretrial conference. The pretrial conference is currently scheduled for October 18, 2012. That leaves over two months for Defendant to depose Claunch. However, because half of the *Geiserman* factors point to exclusion, the Court is not obligated to grant a continuance. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883-84 (5th Cir. 2004) (where first and third factors of the analysis pointed to exclusion, no continuance was required). "Otherwise, the failure to satisfy the rules would never result in exclusion, but only in a

continuance. Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Id.* at 884.

Half of the *Geiserman* factors point to exclusion. In light of Plaintiff's failure to provide any explanation whatsoever for his failure to designate Claunch as an expert witness, the Court does not believe that a continuance is merited. Accordingly, the Court will exclude the proposed expert testimony of Robert W. Claunch from the trial of this matter and not consider it when addressing Defendant's motion for summary judgment.

### 2.    *Competence*

Alternatively, the Court notes that Plaintiff may not intend to introduce Claunch as an expert witness. He may simply intend for Claunch to be a fact witness, and for Claunch's opinion to be introduced as a lay opinion. The Court will not presently address whether it would be appropriate for a fact witness or lay person to offer opinions of the sort contained in Claunch's letter of March 16, 2009. Even if Plaintiff was not required to designate Claunch as an expert, the letter is not competent evidence. It was neither sworn nor signed under penalty of perjury. *Nissho-Iwai*, 845 F.2d at 1306; 28 U.S.C. § 1746.

### III. DEFENDANT'S *DAUBERT* MOTION [41]

Defendant argues that the Court should exclude the testimony of Plaintiff's proposed expert witness, George Sumrall, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995). Defendant argues that Sumrall's testimony would be neither relevant nor reliable. For

the reasons stated below, the Court agrees.

## A.  Daubert *Standard*

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992).

"[W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). In *Daubert*, the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including:

"whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Id.* at 989 (punctuation omitted).

> Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience, but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

The reliability of proposed expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). "[T]he expert's testimony must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009) (alteration original). Therefore, "[t]he . . . reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field." *Id.* The testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). While the Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

"The proponent of expert testimony . . . has the burden of showing that the testimony is reliable," *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004), and must establish the admissibility requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). When deciding whether expert testimony is admissible, the Court is not "bound by evidence rules, except those on privilege." FED. R. EVID. 104(a). Accordingly, in deciding Defendant's *Daubert* motion, the Court may consider any evidence in the record – including Sumrall's deposition transcript – regardless of the evidentiary rulings above.

## B.    *Analysis*

The Court has no doubt that Mr. Sumrall is qualified to provide expert testimony on the subject of house construction and repair. However, it is manifestly obvious from the evidence in the record that the proposed expert testimony of George Sumrall is neither reliable nor relevant, and that it should not be admitted at the trial of this matter or considered by the Court during the disposition of Defendant's motion

for summary judgment.

1.    *Ghost-Writing*

First, Sumrall testified that he did not prepare or assist in the preparation of the expert reports disclosed by Plaintiff. Sumrall merely signed them at Plaintiff's request. Indeed, the reports include references to an engineer's report and fire department reports that Sumrall denied having reviewed. Rule 26 explicitly requires the disclosure of a "written report – signed and prepared" by the proposed expert witness. FED. R. CIV. P. 26(a)(2)(B). "Preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 293 (E.D. Va. 2001). Therefore, an attorney – or, in this case, a party – is not permitted to "ghost-write" an expert's report. *See Estate of LaFarge v. Kyker*, 2011 U.S. Dist. LEXIS 143015, at *22 (N.D. Miss. Dec. 12, 2011).

This issue generally arises in the context of a motion to strike a designation for failure to disclose. *See Id.* However, in the undersigned judge's opinion, the inherent deception involved in such "ghost-writing" taints the proposed expert testimony to a degree that its reliability may be questioned. Although the Court does not hold that "ghost-writing," by itself, is sufficient to render testimony unreliable for *Daubert* purposes, it should be a factor in the Court's analysis.

2.    *Insufficient Data*

Second, Sumrall's opinion is unreliable because it is based upon insufficient facts, data, information, and/or observations. The loss at issue in this case occurred on August 17, 2008. Sumrall viewed the house in 2012, after demolition had already begun and after the house had been exposed to the elements for years after the initial loss. When Sumrall viewed the house, he did not go inside it. Beyond this limited viewing of the house years after the fire, the only data he relied upon in forming his opinions were three photographs provided to him by Plaintiff. He did not consider the reports of the Hattiesburg Fire Department, the engineer's report obtained by Plaintiff, the structural integrity assessment obtained by Defendant, or the estimate generated by Defendant's adjuster.

Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Seaman*, 326 F. App'x at 725; *see also Paz*, 555 F.3d at 388. In forming his opinions regarding the amount of damage to the house, Sumrall literally only considered his exterior viewing of the house, three photographs, and whatever Plaintiff might have told him. No one could form a reliable opinion regarding the cost to repair and/or construct a house on that meager basis.

*3.     Relevance*

Finally, Sumrall's opinion is irrelevant to the factual issues that will be presented to the jury. The core factual issue in this case is the amount of damage to the subject dwelling and the feasibility/cost of repair *immediately after the loss in 2008*. Sumrall testified that he viewed the house in 2012 and acknowledged that there would

have been less damage in 2008 immediately after the fire. When directly asked whether he had an opinion as to the amount of damage to the house in August 2008, he answered that he could not give a true opinion. He stated that he would have needed to see the house in 2008 to do so.

Therefore, the Court finds that Sumrall's opinion testimony would be irrelevant to the factual issues to be presented to the jury. *See Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010) (where proposed expert admitted that there was no basis for his opinion, his testimony had no probative value); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998) (where expert failed to account for intervening factors in his analysis, district court was entitled to conclude that his opinion would not assist the trier of fact).

For the reasons stated above, the Court grants Defendant's Motion to Exclude [41] the proposed expert testimony of George Sumrall. The Court will not consider his testimony when addressing Defendant's motion for summary judgment.

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [43]

### A.    *Standard of Review*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the

nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## B.    *Analysis*

The central dispute in this case is whether the payment tendered by Defendant satisfies its obligations under the policy. Plaintiff argues that Defendant is obligated to pay him full replacement cost, which Plaintiff believes to be equal to the policy limits. Therefore, the Court's task is to examine the competent and admissible evidence presented by the parties and to determine whether there exists a genuine dispute of material fact with regard to Defendant's compliance with the policy.

### 1.    *Breach of Contract*

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009).

> In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions. When parties to a contract make mutual promises (barring some defense or condition which excuses performance), they are entitled to the benefit of their bargain. Thus, insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated.

* * *

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. . . . If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. Exclusions and limitations on coverage are also construed in favor of the insured. Language in exclusionary clauses must be clear and unmistakable, as those clauses are strictly interpreted.

*Id.* (punctuation omitted); *see also Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

Plaintiff's insurance policy provides, in pertinent part:

> **3.** **Loss Settlement.** Covered property losses are settled as follows:

* * *

> **c.** BUILDINGS UNDER COVERAGE A OR B AT

REPLACEMENT COST WITHOUT DEDUCTION FOR DEPRECIATION, SUBJECT TO THE FOLLOWING:

**(1)** IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS 80% OR MORE OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE COST OF REPAIR OR REPLACEMENT, WITHOUT DEDUCTION FOR DEPRECIATION, BUT NOT EXCEEDING THE SMALLEST OF THE FOLLOWING AMOUNTS:

    **(a)** THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

    **(b)** THE REPLACEMENT COST OF THAT PART OF THE BUILDING DAMAGED FOR EQUIVALENT CONSTRUCTION AND USE ON THE SAME PREMISES; OR

    **(c)** THE AMOUNT ACTUALLY AND NECESSARILY SPENT TO REPAIR OR REPLACE THE DAMAGED BUILDING.

**(2)** IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS LESS THAN 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE LARGER OF THE FOLLOWING AMOUNTS, BUT NOT EXCEEDING THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING:

    **(a)** THE ACTUAL CASH VALUE OF THAT PART OF THE BUILDING DAMAGED; OR

    **(b)** THAT PROPORTION OF THE COST TO REPAIR OR REPLACE, WITHOUT DEPRECIATION, OF THAT PART OF THE BUILDING DAMAGED, WHICH THE TOTAL AMOUNT OF INSURANCE IN THIS POLICY

ON THE DAMAGED BUILDING BEARS TO 80% OF THE REPLACEMENT COST OF THE BUILDING.

*  *  *

**(4)** WE WILL PAY NO MORE THAN THE ACTUAL CASH VALUE OF THE DAMAGE UNTIL ACTUAL REPAIR OR REPLACEMENT IS COMPLETE. ONCE ACTUAL REPAIR IS COMPLETE, we will settle the loss according to the provisions of c.(1) and c.(2) above.

Therefore, the policy requires Defendant to initially pay the actual cash value of the damage to the house. Once Plaintiff has repaired the damage or replaced the house, Defendant is obligated to settle the remainder of the loss. How Defendant pays the remainder of the loss is determined by the extent of the damage.

Defendant presented an affidavit [43-2] from its adjuster, Michael Smith. Smith stated that he conducted a thorough inspection of the dwelling on Aucust 18, 2008, the day after the fire. On August 19, 2008, he viewed the property with another adjuster, Debra Barclay, and on August 22, 2008, a cause and origin investigator conducted an independent investigation at Defendant's request. Over the course of a few months after the fire, Defendant's agents met with Plaintiff and viewed the dwelling on multiple occasions; spoke with witnesses; and took photographs, measurements, inventories, and notes regarding the loss.

During Smith's investigation, he spoke with firefighters and reviewed the reports of the Hattiesburg Fire Department. In support of its motion, Defendant presented an affidavit [43-9] from Captain Michael Davidson, a member of the

Hattiesburg Fire Department who responded to the fire at Plaintiff's dwelling. Captain Davidson stated that the fire was contained to one room in the house, and that he did not believe the house was "totally destroyed as a result of the fire." The Fire Department's reports [43-8] indicate that the fire was under control within six minutes of the first alarm, and within four minutes of the first unit's arrival at the house. The reports also indicate that the fire was contained in the living room, but that the rest of the house was "heavily damaged" by smoke.

After gathering all of this information, Smith used a damage analysis computer program to generate an estimate of the damage. The estimate [43-3] provided that the proper payment for the actual cash value of the damage to the dwelling was $34,343.94,[2] with an additional $28,966.23 to be paid if repairs were made and proper documentation submitted. Based on the estimate, Defendant tendered a check for $34,343.94, but Plaintiff refused to accept it.

Plaintiff contends that the house was a total loss, and that the damage far exceeded Defendant's estimate. However, he failed to present any admissible evidence probative of this issue. The Court excluded the testimony of Plaintiff's proposed expert witness, George Sumrall, and the Court excluded a letter from an engineer named Robert Claunch. There are only two pieces of admissible evidence that arguably support Plaintiff's position.

First, Defendant's claim notes [54-3] contain statements that the dwelling was

---

[2]Smith estimated that the actual cash value of the damage was $35,343.94, but Plaintiff's deductible was $1,000.00.

"unlivable." However, the Court finds that this is not sufficient to create a genuine dispute of material fact as to the actual cash value of the damage to the house. The house may have been "unlivable," but Defendant's estimate of the actual cash value of the damage may be accurate nonetheless. Second, the Fire Department's reports indicate that the house was "heavily damaged by smoke." This is not sufficient to create a genuine dispute of material fact, though. The central factual issue of this case is not whether the house was damaged. Rather, it is the amount of the damage.[3]

In summary, under the terms of the policy, Defendant is obligated to initially pay no more than the actual cash value of the damage to the dwelling. Defendant presented admissible evidence that the actual cash value of the damage to the house was $35,343.96.[4] Defendant also presented evidence that it tendered that amount to Plaintiff. In response, Plaintiff has not presented any admissible evidence that creates a genuine issue of material fact as to the actual cash value of the damage. Therefore, the Court finds that Defendant did not breach the policy, and the Court grants Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim.

---

[3] Plaintiff also presented a DVD of a news report about the subject fire, in which a reporter makes various statements about the severity of the fire and amount of damage to the house. News reports "are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).

[4] The proper payment, after Plaintiff's $1,000.00 deduction, would be $34,343.96.

The Court also grants Defendant's motion for summary judgment with respect to its counterclaim for a declaratory judgment. The replacement cost of repairs to damages resulting from the fire at the subject house was correctly estimated by Defendant to be no more than $64,310.17, and the actual cash value was correctly estimated by Defendant to be $35,343.94. Therefore, as it is undisputed that Plaintiff has not repaired or replaced the dwelling, Defendant currently owes Plaintiff $34,343.94 for the actual cash value of the damage to the dwelling.

## 2.    *Bad Faith*

In Mississippi, to prevail on a bad faith claim, a plaintiff must prove "that the insurer lacked an arguable or legitimate basis for denying [or delaying payment of] the claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Dauro v. Allstate Ins. Co.*, 114 F. App'x 130, 135 (5th Cir. 2004) (alteration original). An insurer has no arguable basis for delaying or denying payment on a claim if "nothing legal or factual would have arguably justified" its position. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 272 (5th Cir. 2008).[5] Whether Defendant had an arguable basis for its actions "is an issue

---

[5]*See also Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 (5th Cir. 1988) (if the evidence suggests that the insurer had a reasonably arguable basis for denying the claim, its conduct cannot constitute bad faith); *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 447 (S.D. Miss. 2010) (to prove a bad faith claim, a plaintiff must show that the insurer lacked an arguable or legitimate basis for its actions); *Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 572, 579 (to survive summary judgment on a bad faith claim, a plaintiff must show that a material issue of fact exists as to whether the insurer lacked an arguable or legitimate basis for denying his claim); *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1179 (Miss. 2010) (where insurer had an arguable basis for denying claim,

of law for the court." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008).

As discussed above, Defendant provided evidence demonstrating that it had a reasonably arguable basis for its payment of $34,343.96. Plaintiff has not offered any admissible evidence which creates a genuine dispute of material fact on this issue. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's bad faith claim.

3.    *Mail Fraud*

"The mail fraud statute is criminal in nature, and it does not create a private right of action." *Crawford Arms v. Waste Mgmt.*, 23 F. Supp. 2d 676, 678 (S.D. Miss. 1998) (citing *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977)). Therefore, to whatever extent Plaintiff pled a claim of mail fraud, the Court grants Defendant's motion for summary judgment with respect to it.

4.    *"Toxic Danger"*

The record contains no evidence whatsoever that a toxic danger exists on the subject property, or that such danger was caused by Defendant. Expert testimony is required to prove causation in toxic tort cases. *Seaman*, 326 F. App'x at 723-24. Furthermore, to prevail on a claim for mold-caused property damages, a plaintiff must offer expert testimony demonstrating the cause of the alleged mold infestation. *Smith*

---

it did not act in bad faith); *Wise v. United Servs. Auto. Ass'n*, 861 So. 2d 308, 319-20 (Miss. 2003) (where insurer had a legitimate and arguable basis in law for denying claim, plaintiffs did not have a valid bad faith claim).

*v. ADT Sec. Servs.*, 2006 U.S. Dist. LEXIS 70109, at *11 (S.D. Miss. Sept. 26, 2006). Plaintiff has presented no such evidence here. Accordingly, the Court grants Defendant's motion for summary judgment as to any "toxic danger" or toxic tort claim asserted by Plaintiff.

5.    *Negligence*

As far as the Court can discern from Plaintiff's pleadings, his negligence claim arises from Defendant's alleged failure to pay benefits owed under the policy. Accordingly, the "negligence" claim sounds in contract, rather than tort. *See Law v. Aetna Life Ins. Co.*, 2011 U.S. Dist. LEXIS 75244, at *10 (S.D. Miss. July 12, 2011) (where claims arose from alleged breach of insurance policy, they were contract claims, not negligence claims); *Wallace v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 7235, at *6 (S.D. Miss. Jan. 14, 2010) (where dispute arose out of insurance policy, it sounded in contract, not tort). As noted above, Defendant did not breach the policy. Accordingly, the Court grants Defendant's motion for summary judgment with respect to any negligence claim that may have been asserted by Plaintiff.

6.    *Contents*

Finally, Defendant seek summary judgment on a counterclaim against Plaintiff for a declaratory judgment that Plaintiff is not entitled to receive any additional funds under the policy's contents coverage. However, Defendant did not originally seek a declaratory judgment as to the contents portion of the claim. Indeed, Defendant specifically pled that it had reached a settlement with Plaintiff regarding his contents claim." Therefore, the Court finds that Defendants did not seek a declaratory judgment

with respect to the contents coverage, and, to the extent Defendant requests one now, the Court denies the motion.

The Court further notes that "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201(a), requires an 'actual controversy' between the parties to the declaratory judgment action. The declaratory judgment plaintiff must establish that this requirement was satisfied at the time the complaint was filed – post-filing conduct is not relevant." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Therefore, even if Defendant had originally requested a declaratory judgment as to the contents claim, the Court would have been required to dismiss the counterclaim without prejudice.

## V. Remaning Motions

The Court denies Defendant's Motion for Sanctions [88]. It also denies Defendant's Motions to Strike [73, 79, 80] and Plaintiff's Motion for an Extension of Time [64] as moot.

## VI. Conclusion

For all the reasons stated above:

- The Court **grants** Defendant's Motion to Exclude [41] the testimony of George Sumrall.

- The Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [43]. The Court grants the motion with respect to all of Plaintiff's claims and Defendant's counterclaim for a declaratory judgment as to its obligations under the policy with respect to the dwelling. However, the Court finds that Defendant did not plead a declaratory judgment claim with respect to Plaintiff's contents claim and denies Defendant's motion insofar as Defendant now seeks such.

29

- The Court **denies** Defendant's Motion for Sanctions [88].

- The Court **denies as moot** Plaintiff's Motion for an Extension of Time [64] and Defendant's Motions to Strike [73, 79, 80].

Finally, Plaintiff made a variety of allegations and objections in a response [92] to Judge Ozerden's order [90] denying Plaintiff's motion for reconsideration of the recusal issue. The Court will not address them, as they have no bearing on the matters addressed in this opinion.

Plaintiff's claims are dismissed with prejudice, and the Court grants a declaratory judgment in favor of Defendant as to Plaintiff's dwelling claim. The Court will enter a separate final judgment in accordance with this opinion pursuant to Rule 58.

SO ORDERED AND ADJUDGED this 26th day of July, 2012.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE